IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISRAEL RUIZ, ) | |
| ) | |
| Plaintiff ) | No. 06 C 1975 |
| ) | |
| v. ) | The Honorable William J. Hibbler |
| ) | |
| DR. ANDREW TILMAN, DR. PARTH GHOSH, ) | |
| WARDEN DIERDRE BATTAGLIA, ASSISTANT ) | |
| WARDEN JIMMY DOMINGUEZ, OFFICER ) | |
| ALEX D. JONES, OFFICER RENATA GLENN, ) | |
| OFFICER GOINES, OFFICER SELMON, ) | |
| OFFICER TURNER, OFFICER MILSAP, ) | |
| OFFICER QUARRELS, OFFICER TORRES, ) | |
| AND OFFICER GOBBLE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

For three months, Israel Ruiz went without medication prescribed to him by his treating physicians. Consequently, Ruiz sued several doctors and various prison officials who worked at the Stateville Correctional Center, where Ruiz is housed, pursuant to 42 U.S.C. § 1983. Doctor Ghosh and some of the prison officials move for summary judgment on Count I of Ruiz's claim, arguing that Ruiz failed to exhaust his administrative remedies. The Court DENIES their motion.

### I. Factual Background

Israel Ruiz is incarcerated at Stateville Correctional Center. (Prison Officials' 56.1(a)(1) St. ¶ 1). In February 2005, Ruiz underwent surgery to have a cyst removed from his head. (Pl. 56.1(b)(3)(C) St. ¶ 1). After the surgery, doctors prescribed Tegretol for ten months in order to prevent seizures. (Pl. St. ¶¶ 1,2; Pl. Ex. 1). Ruiz's initial supply of Tegretol ran out at the end of May 2005. (Pl. St. ¶ 3).

1

After hospital staff and prison officials failed to provide Ruiz with a new supply of Tegretol, he filed an emergency grievance on June 20, 2005 with the Chief Administrative Officer (CAO) at Stateville, Warden Dierdre Battaglia. (Pl. St. ¶ 5). Ruiz complained in the grievance that he had been asking for his medication for more than three weeks and that he had been awakening with his "hands shaking uncontrollably." (Pl. Ex. 1). In the section of the grievance for relief requested, Ruiz asked that the responsible person be fired and that he be given his medicine. (Pl. Ex. 1). Ruiz also asked for monetary damages. (Pl. Ex. 1). Roughly two weeks later, Warden Battaglia noted on the grievance that it was indeed an emergency, but took no other action. (Pl. Ex. 1; Pl. St. ¶ 8). Nor did Ruiz hear from any other employee at Stateville regarding the status of his June 20 emergency grievance. (Pl. St. ¶ 8). In fact, Ruiz instead received the drug Tagamet, which had made his condition worse. (Pl. St. ¶¶ 21-22).

Prison officials continued to ignore Ruiz's grievance throughout July. On August 2, still without his prescribed medication, Ruiz had an appointment at the Health Care Unit (HCU) to have his medicine levels checked. (Pl. St. ¶ 15). According to Ruiz, Officer Goines refused to allow him to attend the appointment. (Pl. St. ¶ 16). At the time, Ruiz still had received no response regarding his June 20 emergency grievance and also still had yet to receive his prescribed medication.

On August 11, Ruiz brought the June 20 emergency grievance to the attention of his grievance counselor, Counselor Bass and the Administrative Review Board (ARB). (Pl. St. ¶ 9; Pl. Ex. 1). Still, nothing happened. Two weeks later, Ruiz brought his emergency grievance and lack of prescribed medication to the attention of another grievance officer, Officer Garbs. (Pl. St. ¶ 10). The next day prison officials confirmed via a blood test that Ruiz had not been receiving the Tegretol he had been prescribed. (Pl. St. ¶ 11). A few days later, Ruiz received his medication — approximately three

2

months after his initial supply ran out and more than two months after he filed a formal grievance. (Pl. St. ¶ 12).

Unsatisfied with the treatment he had received, Ruiz filed additional grievances. On August 30, Ruiz filed an emergency grievance complaining that Officer Goines had prohibited him from attending his August 2 appointment. (Pl. St. ¶ 17; Pl. Ex. 2). Ruiz asked for monetary damages and that Officer Goines receive a reprimand. (Pl. Ex. 2). Warden Battaglia ruled that the August 30 grievance was not an emergency and returned it to him, with printed instruction to submit the grievance in the "normal" manner. (Pl. St. ¶ 18).[1]

On September 11, Ruiz filed another grievance complaining generally about the length of time that it took to resolve his medical issue and asking for, among other things, financial compensation, training of prison hospital staff, and the termination of those responsible for failing to provide his medication. (Pl. St. ¶ 23; Ex. 3). Warden Battaglia ruled that the September 11 grievance was not an emergency and returned it to him, with the same printed instruction. (Pl. St. ¶ 24). Despite Defendants' contention that Ruiz never submitted the grievance in the "normal" manner, grievance counselor Bass notes on the grievance itself that it was received on October 1 and that the "issue has been addressed" by Dr. Ghosh and the HCU staff. (Pl. Ex. 3).

---

[1] The parties dispute whether Ruiz submitted his August 30 grievance in the "normal" manner, each relying on affidavits to support their position. The Defendants suggest that Ruiz cannot rely on a "self-serving affidavit," yet seem to ignore the fact that they themselves rely solely on a self-serving affidavit. In any event, Defendants' assertion of law is incorrect. The Seventh Circuit has warned repeatedly against the practice of trying to discredit affidavits as self-serving. The Seventh Circuit notes that "'[m]ost affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial.'" *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (quoting *Wilson v. McRae's Inc.*, 413 F.3d 692, 694 (7th Cir. 2005)). The record may include so-called self-serving affidavits so long as they detailed, specific, and based upon personal knowledge. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

3

At some point, Ruiz submitted a copy of his June 20 grievance to the ARB. (Pl. St. ¶ 9, 27). The ARB returned the grievance to him, requesting that he attach the grievance officer's and Warden Battaglia's response to the grievance (which, of course, Ruiz could not do since Battaglia never responded to this grievance). (Dr. Ghosh St. Ex. D; Pl. St. Ex. 9). By the time Ruiz received the ARB's response in November 2005, he had received the medication he had been prescribed.

Ruiz then filed this suit.

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct., 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. Fed.R.Civ.P. 56(c). Once the moving party has met the initial burden, the nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir.2005). During the Court's review, it must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

III. Discussion

Defendants argue that the Court should grant summary judgment because Ruiz failed to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA) requires a prisoners to exhaust all administrative remedies prior to bringing a suit under § 1983 concerning the conditions of confinement. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Exhaustion is mandatory, and neither a prisoner's perception that exhaustion would be futile nor the absence of a particular remedy (such as monetary damages) excuse a prisoner's failure to exhaust, so long as some remedy is available. *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Thornton v. Snyder*, 428 F.3d 690, 696 (7th Cir. 2005) (discussing *Booth*, 532 U.S. at 734, 121 S.Ct. 1819). As a general rule, a prisoner must comply with the rules established by the state with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002).

The Illinois Administrative Code establishes the grievance process used by the Illinois Department of Corrections. 20 Ill. Admin Code §§ 504.800 *et seq*. Under this process, an inmate can submit a written grievance to a prison employee serving as a grievance officer, who submits a recommendation to the Chief Administrative Officer (CAO), typically the warden. 20 Ill. Admin Code §§ 504.810, 504.830. An inmate may also request that the grievance be handled as an emergency by submitting it directly to the CAO, who must determine whether there is a substantial risk of imminent personal injury or substantial harm. 20 Ill. Admin Code § 504.840. The Code also contains an appeals process where an inmate can appeal an unfavorable decision by the CAO. 20 Ill. Admin Code § 504.850.

At the outset, the Court notes that the Defendants labor under a substantially flawed presentation of the facts. The prison officials state that Ruiz filed *two* grievances, one on August 30 and one on September 11. Defendants argue that Warden Battaglia ruled that neither the August 30 nor the September 11 grievance were emergencies and that Ruiz abandoned these grievances when he failed to submit them in the "normal" manner after Warden Battaglia deemed they were not emergencies. Ruiz, however, filed *three* grievances, including one on June 20 that Warden Battaglia did accept as an emergency but otherwise ignored. Doctor Ghosh, who joins in the prison officials' motion, does not correct this inaccuracy, although he attaches the June 20 grievance to his motion. Defendants' entire motion thus is based on a grossly inaccurate recitation of the facts.

Not to be deterred, prison officials argue in their reply that Ruiz's August 30 and September 11 grievances superceded the June 20 grievance, making it immaterial. The August 30 grievance, however, concerns a wholly different subject matter — Officer Goines's decision to prevent Ruiz from attending a medical appointment — than the June 20 grievance, which concerns the prison's failure to provide him with medication. Similarly, the September 11 grievance addresses the substantial time it took the prison to provide Ruiz with his medicine and not the failure to provide it all. The Defendants offer no caselaw supporting their argument that subsequently filed grievances, particularly those grieving different complaints, act as amended complaints and absolve the Defendants of the responsibility of addressing an earlier filed grievance.

Very little else needs to be said in regards to Defendants' motion as it relates to the June 20 grievance. It is well settled that when prison officials frustrate an inmate's attempt to grieve a complaint any administrative remedies are "unavailable" to him. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The PLRA is not so narrow as to permit prison officials "'to exploit the exhaustion

6

requirement through indefinite delay in responding to grievances.'" *Id.* (quoting *Goodman v. Carter*, No. 00 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)). In fact, the Code requires the CAO to respond to the inmate in writing within two months, if reasonably feasible, *even where the grievance is not an emergency.* 20 Ill. Admin Code. § 504.840(d). In this case, Warden Battaglia recognized that a failure to dispense prescribed medication to an inmate constituted an emergency, but then wholly ignored the mandatory duty to "expedite processing of the grievance and respond to the offender." 20 Il. Admin. Code § 504.840. Instead, she did nothing.

Ruiz brought his lack of medication to the attention of prison officials both informally and formally, and followed the procedures set forth in the Illinois Administrative Code. At every turn, they obstructed his efforts to obtain that medication: by ignoring his grievances, by providing him an incorrect medication, by refusing to allow him to see the medical staff to determine if he was receiving medication. The ARB even requested that he submit a document (Warden Battaglia's response to the June 20 grievance) that she never produced. The Court holds that a two month failure to respond to a grievance deemed by the Warden to be an emergency rendered any remedy under the Code for emergency grievances unavailable to Ruiz.

Even if the prison officials' untimely delay in responding to Ruiz's June 20 emergency grievance did not render that remedy unavailable, by the time prison officials did respond there no longer was an available remedy. On August 30 Grievance Counselor Bass noted on the June 20 grievance that Ruiz received sixty tablets of Tegretol two days earlier. Defendants argue that Ruiz had some obligation to persist in pursuit of the June 20 grievance, but that position is not supported in the law. The requirement to exhaust all available remedies "requires that *some* remedy is available to the inmate through the administrative process." *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005)

7

(emphasis in original); see also *Booth*, 532 U.S. at 741 n. 6, 121 S.Ct. 1819.[2] Here, as in *Thornton*, Ruiz had received the *available* relief he requested (his medicine) in his June 20 grievance, and his "'duty to exhaust available remedies [was] complete.'" *Id.* (quoting *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004)).

Doctor Ghosh raises one final argument in his reply. Dr. Ghosh suggests that Ruiz's "June 6 [sic] emergency grievance is directed only against Dr. Tilden and does not complain of Defendant Dr. Ghosh." (Dr. Ghosh Repl. at 2). This is factually incorrect. Ruiz complains that he asked "nurses, doctors, and even had every sargent [sic] call and ask for my medicine . . . to no avail." (Pl. Ex. 1). Ruiz does not name any specific doctor and the Court will not presume that it is "directed only against Dr. Tilden."

Defendants also argue that Ruiz failed to exhaust his August 30 and September 11 grievances when he failed to submit them in the "normal" manner after Warden Battaglia refused to expedite them on an emergency basis. This argument is also without merit. The Seventh Circuit has twice rejected this position. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("there is nothing in the current regulatory text, however, that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."); *Muhammad v. McAdory*, 06-2304, 2007 WL 173822, at *2 (7th Cir. Jan. 17, 2007) ("inmate who has requested that prison officials handle a grievance on an emergency basis . . . is not required to resubmit the grievance through standard procedures after the warden . . . concludes that the grieved condition is not an emergency."). Defendants suggest that Ruiz

---

[2] Defendants suggest that the Supreme Court "reasserted" its holding in *Booth* in *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed. 368 (2006) thus overruling *Thornton*. The Seventh Circuit interpreted *Booth* in *Thornton*. *Ngo* merely restates the basic holding in *Booth*, and does not suggest that *Thornton* wrongly interpreted the Supreme Court's prior decision.

8

was obligated to follow the procedures established by the prison, but that is not what the law requires. Ruiz is obligated to follow the procedures established set forth in the Illinois Administrative Code, and he did so.

Warden Battaglia never responded in writing to Ruiz's August 30 or September 11 grievances (though a grievance counselor did review the September 11 grievance). In order to appeal the CAO's decision, an inmate must submit the grievance officer's report and the CAO's decision to the ARB. 20 Ill. Admin Code § 504.850(a). In fact, when Ruiz attempted to appeal the non-existent decision of Warden Battaglia, it returned his grievance to him and requested that he attach the CAO's decision to his appeal. (Dr. Ghosh Ex. D). Defendants cannot blame Ruiz for failing to appeal a decision that was never issued. The Court holds that Warden Battaglia's failure to issue a decision with regard to Ruiz's August 30 and September 11 grievances rendered any remedy under the Code unavailable to Ruiz.

For three months, Ruiz attempted to convince prison officials that he lacked medication that was prescribed to him, and for three months they ignored his requests, both informal and formal. Even after determining that Ruiz had filed a valid emergency grievance, prison officials obstructed his attempt to grieve the failure to provide him with medicine. Only after providing him with his medication did they finally begin to address his grievances. Defendants' arguments that Ruiz failed to exhaust his administrative remedies are without merit and the Court DENIES their motions for summary judgment.

IT IS SO ORDERED.

2/25/09
Dated

Hon. William J. Hibbler
United States District Court